UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AARON LEWIS,<br><br>*Plaintiff,*<br><br>*v.*<br><br>MARK KOHLER, SECRETARY OF THE STATE,<br><br>*Defendant.* | Civil No. 3:22-cv-01225(JBA)<br><br>August 25, 2023 |

**RULING GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiff is a member of the Libertarian Party of Connecticut ("Libertarian Party") who was the Libertarian Party's 2022 candidate for Connecticut Governor. He claims that the laws governing Connecticut's petition system for ballot access ("the Petitioning Laws") discriminate against minor parties, their candidates and their supporters, and therefore violate the First, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as Article I § 2 of the Connecticut Constitution. He seeks temporary and permanent injunctive and declaratory relief that the Petitioning Laws violate the Fourteenth Amendment by reinforcing systemic racism. Plaintiff previously moved for a preliminary injunction [Doc. # 8] requiring Defendant to grant Plaintiff's petition to appear on the 2022 ballot, which was denied. (Order Denying Prel. Inj. [Doc. # 17]). The Court assumes familiarity with the underlying facts of this case. (*Id.* at 1-4.) Defendant moves to dismiss [Doc. # 27] Plaintiff's Amended Complaint [Doc. # 25] pursuant to 12(b)(1) and 12(b)(6). Plaintiff opposes [Doc. # 30].

**I.   Legal Standard**

When deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff has stated a legally cognizable claim by allegations that, if true, would plausibly show that the plaintiff is entitled to relief, *see Bell Atl. Corp. v. Twombly*, 550 U.S.

1

544, 557 (2007), by assuming all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *See Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). However, this principle does not extend to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1] Because "only a complaint that states a plausible claim for relief survives a motion to dismiss," *Iqbal*, 556 U.S. at 679, a complaint must contain "factual amplification . . . to render a claim plausible*.*" *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). A complaint that only "offers 'labels and conclusions'" or "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(b)(1). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. *Makarova*, 201 F.3d at 113.

**II.    Discussion**

    **A.    Mootness**

Defendant argues that because the 2022 election has passed, Plaintiff's claims for relief pertaining to his candidacy in the 2022 election are moot. (Def.'s Mem. [Doc. # 27-1] at 11-13.) Plaintiff argues that his claims should survive because they fall under the exception for being capable of repetition, yet evading review, because he intends to run for governor

---

[1] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

again in 2026.[2] (Pl.'s Opp'n [Doc. # 29] at 7-8.) "[A] case is capable of repetition, yet evading review where both of the following requirements are met: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Van Wie v. Pataki*, 267 F.3d 109, 113-14 (2d Cir. 2001).

Defendant notes that while Plaintiff represents his intention to run for Governor as a Libertarian in the 2026 election (Pl.'s Opp'n at 2, 4), "he does not allege- nor could he- that the Libertarian Party will select him as their candidate for governor and nominate him for the office. The Libertarian Party is free to select the candidate of its choice for each office it intends to field a candidate in each election." (Def.'s Mem. at 12.) Because Plaintiff's renomination for the Libertarian gubernatorial ticket in four years is speculative, Defendant argues Plaintiff cannot satisfy the second prong of the capable of repetition test – that there is "a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Van Wie*, 267 F.3d at 114. In *Presnick*, the district court found the case to be moot as to a plaintiff who failed to meet minor party petitioning requirements and was denied a place on the ballot, because the election had passed. *Presnick v. Bysiewicz*, 297 F. Supp. 2d 431, 433-35 (D. Conn. 2003). "[W]e deem capable of repetition to mean that there is a reasonable expectation that the same complaining party would be subjected to the same action again, [and so] the appellant must show that these same parties are reasonably likely to find themselves again in dispute over the issues raised in this appeal." *Id.* at 435 (quoting *Dennin v. Conn. Interscholastic Athletic Conference*, Inc., 94 F.3d 96, 101 (2d Cir. 1996)). Plaintiff makes clear he is not complaining on behalf of the Libertarian Party of Connecticut and is only bringing claims on behalf of himself. (Pl.'s Opp'n at 6.) He predicts that, as in the 2022 election cycle, he may run and win the nomination of the Libertarian Party but then fail

---

[2] Plaintiff references running for governor in 2024 (Pl.'s Opp'n at 2,4), but since there is no Connecticut gubernatorial election in 2024, the Court will assume Plaintiff intends to run in 2026.

to meet the petitioning requirements because of the constitutional impediments he alleges. Here, Plaintiff's contention that he will be nominated as the Libertarian candidate for Governor in 2026, and thus be subject to the challenged requirements under the Petitioning Laws as in 2022, is highly speculative. As such, Plaintiff's claims based on 2022 ballot access requirements are moot, and any claims seeking relief as it pertains to ballot access in 2026 are not yet ripe.[3]

### B.  Res Judicata

Defendant argues that res judicata bars Plaintiff's Claims in Counts One, Two and Three because Plaintiff is in privity with the Libertarian Party, and the Libertarian Party and Libertarian candidates previously brought suit on these claims and lost in *Misbach v. Merrill*, No. X03- HHD-CV19-6118097S, 2021 Conn. Super. LEXIS 7216 (Conn. Super. Ct. Apr. 30, 2021).

> "Generally, for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue. . . . Before collateral estoppel applies. . . there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding."

*Rockwell v. Rockwell*, 196 Conn. App. 763, 769 (2020).

The Amended Complaint in *Misbach* ([Doc. # 27-2] at 43-88) features allegations mirroring many of the allegations in the operative Amended Complaint here including

> "(1) denial of procedural and substantive due process arising from the late date on which the Secretary issues determinations of which candidates will be placed on the ballot, ¶¶1-22; (2) undue burden imposed by the ballot access requirements and disparate treatment in comparison to the major parties in violation of the equal protection clause, *id*. ¶¶23-40; (3) the petitioning requirements violate the First and Fifth amendments by compelling speech by imposing requirements on voters to provide personal information and on

---

[3] This bars Count One, and certain allegations in Count Two (Am. Compl. ¶ 57.)

4

circulators to aver to the authenticity of voter's signatures, *id.* ¶¶42-47; (4) the voter registration form treats minor parties differently than major parties in violation of the equal protection clause; *id.* ¶¶48-61; and (5) the definition of 'major party,' requiring 20% of the votes for governor or 20% of registered party members in the state arbitrarily limits the number of major parties to five in violation of the First and Fourteenth Amendments, *id.* ¶¶62-68."

(Def.'s Mem. at 17-18.)

In *Misbach,* the superior court found that "the state's ballot access statutes do not impose a severe burden on First and Fourteenth Amendment rights" and that important state interests, such as "avoiding confusion, deception, and even frustration of the democratic process at the general election" justify the state's requirements. *Misbach*, 2021 Conn. Super. LEXIS 7216, at *10. The court also found that the requirements imposed on circulators and signers of petitions did not violate First or Fifth Amendment rights, because they did not compel speech, and regardless, "the state's strong interest in preventing election fraud and ensuring election integrity justifies any requirement that interested persons provide truthful information." *Id.* at *11. The state court's decision in *Misbach* was guided by the Second Circuit's ruling the year prior in *Libertarian Party of Connecticut v. Lamont*, which held that Connecticut's ballot access statutes do "not impose a severe burden on First and Fourteenth Amendment rights because a reasonably diligent candidate could be expected to satisfy the signature requirement." 977 F.3d 173, 177 (2d Cir. 2020).

Where an identical or substantially similar case has been previously litigated in state court, the laws of that state determine whether preclusion is warranted. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 95 (2d Cir. 2005). In Connecticut, res judicata can bind a non-litigant where he was in privity with parties to prior litigation. *Girolametti v. Michael Horton Assocs.*, 332 Conn. 67, 75 (2019). "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented . . . . A key consideration in determining the existence of privity is the sharing of the same legal

right by the parties allegedly in privity." *Girolametti v. Michael Horton Assocs.*, 332 Conn. at 76. Factors to consider in making this determination include "the functional relationship between the parties, how closely their interests are aligned, whether they share the same legal rights, equitable considerations, the parties' reasonable expectations, and whether the policies and rationales that underlie [issue or claim preclusion] . . . would be served." *Id.* "The crowning consideration, [however, is] that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of [issue or claim preclusion] is not inequitable." *Id.* Here, this Court concludes Plaintiff is in privity with the plaintiffs in *Misbach* based on their shared interest in broadening ballot access beyond the major parties and the significant overlap between the allegations here and in *Misbach*. Indeed, while Plaintiff represents in his briefing that he brings these allegations only on behalf of himself, the Amended Complaint is rife with allegations of harm to not just Plaintiff, but also the Libertarian Party and other Libertarian candidates. (*See, e.g.*, Am. Compl. ¶¶ 33, 51, 77).[4]

Plaintiff argues that because he was not a party to the prior case, he cannot be barred from making his claims. (Pl.'s Opp'n at 6-7.) He fails to engage in any analysis of the privity issue. Plaintiff also maintains generally that there has "never been a full and adequate opportunity to litigate the claims based on the very nature of the Petitioning Laws and the imposed timeframes themselves," (*id.* at 7) a representation inconsistent with *Misbach*, in which a trial on the merits occurred. *Misbach*, 2021 Conn. Super. LEXIS 7216, at *1. Finally, Plaintiff argues that Count Three presents "new associational claims regarding First and

---

[4] While the Court takes at face value that Plaintiff only seeks relief on behalf of himself, which is why the mootness analysis in Section II(A) still applies, the myriad of references to the interests of the Libertarian Party in his Amended Complaint reinforce the appropriateness of preclusion.

6

Fourteenth Amendment violations," though he does not specify which claims were not litigated in *Misbach*. (Pl.'s Opp'n at 7.)[5]

Reading both the *Misbach* Complaint and the Amended Complaint in this action, the Court agrees with Defendant that res judicata applies to all of Count One and portions of Counts Two and Three. In Count Two, Plaintiff alleges the petitioning Laws "provide disparate treatment to voters and politicians of color such as Plaintiff." (Am. Comp. ¶ 56.) In Count Three, he alleges that the Petitioning Laws "forbid the Plaintiff and those who would associate with him from printing, distributing and using their own ballots listing their own candidates in contravention of their rights protected under the First and Fourteenth Amendments." (Am Compl. ¶ 65.) These allegations are not found in *Misbach* and therefore are not precluded. However, Counts One and the remaining claims in Counts Two and Three are barred by res judicata and will be dismissed.

C. **Failure to State a Claim**

1. **Compelled Speech and Association (Counts 3 and 5)**

In Plaintiff's single non-precluded Count Three allegation, he alleges that prohibiting him from "printing, distributing and using [his] own ballots listing [his] own candidates" violates the First and Fourteenth Amendment. (Am. Compl. ¶ 65.) Similarly, in Count Five, Plaintiff argues that it is a violation of both the First and Fourteenth Amendment of the United States Constitution, as well as Article I § 2 of the Connecticut Constitution, to stop voters from completing and submitting a ballot in the style of their choice.[6] (*Id.* ¶¶ 73-78.)

---

[5] Plaintiff also argues that res judicata does not preclude his Counts Four and Five, but Defendant does not challenge those two counts as precluded.
[6] The Courts analysis in this section only extends to whether Plaintiff has stated a claim under federal law. Because the Court finds that Plaintiff has failed to state a claim under federal law, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim that the Petitioning Laws violate Article I § 2 Connecticut Constitution. Pursuant to 28 U.S.C. § 1367, a district court may decline supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has

In essence, Plaintiff is contesting the notion that the state should be able to exclusively regulate the drafting of the ballot, instead urging a process where parties or individuals can use a self-drafted ballot without state involvement. "It is well-settled that the state has an important interest in ensuring that candidates appearing on the ballot have a 'significant modicum of support.'" *Libertarian Party of Connecticut v. Merrill*, 470 F. Supp. 3d 169, 185 (D. Conn June 27, 2020), *aff'd sub nom. Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173 (2d Cir. 2020) (quoting *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).)

> "*Jenness* and *American Party* establish with unmistakable clarity that States have an undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for placement on the ballot." *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986). If the state were no longer the sole drafter of election ballots and left it to private individuals or parties to construct their own ballots as they saw fit, then the state would lose the power to ensure that candidates appearing on a ballot have "ma[de] a preliminary showing of substantial support."

*Id.* Plaintiff's argument that the state may not play any role as the gatekeeper of who is and is not on the ballot is fundamentally at odds with this well-established state prerogative. Plaintiff's allegations that his constitutional rights are violated by not being able to draft and utilize his own personalized ballot are not shown to be based in law and are dismissed.

### 2. Racial Discrimination (Counts 2 and 4)

Plaintiff argues that the Petitioning Laws violate the Equal Protection Clause by having a disparate impact on African-American voters and candidates, preventing them from

---

dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." When all federal claims have been dismissed, a federal court "must reassess its jurisdiction over the case by considering several factors—judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d. Cir. 2004). "If [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Id*. at 56. Here, all claims arising under federal law have been dismissed well before trial and no facts counsel for the exercise of supplemental jurisdiction over Plaintiff's remaining state law claim.

forming their own political parties. (Am. Compl. ¶¶ 67-72.) In his remaining non-precluded allegation in Count 2, he similarly alleges that "[t]he Petitioning Laws provide disparate treatment to voters and politicians of color such as the Plaintiff." (*Id.* ¶ 56). "In order to establish such a constitutional violation, [Plaintiff] would have to show that [Defendant] intentionally discriminated against [him], either by adopting out of racial animus policies which are facially neutral but have a racially discriminatory effect, or by applying a facially neutral policy in a racially discriminatory manner." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006). Mere "conclusory allegation[s] of discrimination . . . cannot withstand a motion to dismiss." *Id.* Plaintiff alleges that "the Democratic Party and its elected officials themselves have wielded their power to hold down, subjugate and disenfranchise African American candidates from running, being elected, or meaningfully participating in electoral politics should they decide to do so outside of the Democratic Party." (*Id.* ¶ 71.) Beyond this conclusory assertion, Plaintiff does not allege any factual basis for inferring racial animus. As such, Plaintiff fails to state a claim under Count Four.

### III.   Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED. The Clerk is requested to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 25th day of August, 2023